**SO ORDERED.**

**SIGNED January 27, 2016.**



_____
**ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE**

_____

```
            UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA
                   LAFAYETTE DIVISION

IN RE:

LOUISIANA OILFIELD CONTRACTORS
ASSOCIATION INSURANCE FUND,                  CASE NO. 14-51518

     Debtor                                  Chapter 7
-----------------------------------------------------------------
                     REASONS FOR DECISION
-----------------------------------------------------------------
```

The present matters before the court are three motions for relief from the automatic stay filed by Kelvin Hoyt, Richard Kozma, and Westley Bourg (individually, a "Movant" and, collectively, "Movants"), and a motion for an order determining that certain claims and causes of action are property of the estate filed by the debtor, Louisiana Oilfield Contractors Association Insurance Fund ("LOCA"). The core issue raised by each of these motions is the extent to which the Movants can assert claims against (1) their own employers, and (2) LOCA members who did not employ them. The court

took these matters under advisement following oral argument. The court has considered the parties' arguments, briefs, and the relevant authorities, and rules as follows.

## BACKGROUND

LOCA is a workers' compensation group self-insurance fund formed pursuant to the Louisiana Trust Code and governed by LSA-R.S. § 23:1191 et seq. LSA-R.S. § 23:1195 provides that the members of a "bona fide" trade or professional association "may agree to pool their liabilities to their employees on account of personal injury and occupational disease arising out of or incurred during the course and scope of the employment relationship." The statute provides that such funds are not deemed to be workers' compensation insurance and are not subject to the Louisiana Insurance Code. LSA-R.S. § 1195A(3). LOCA's members made annual contributions to the fund based on each member's estimated payroll, and LOCA engaged a risk management company to adjust the claims of injured workers. If the fund experienced a shortfall, LOCA would assess each of its members a pro rata share of the shortfall.

The relationship between LOCA and its members is governed by statute and contract. LSA-R.S. §§ 23:1195 and 1196 govern the creation of self-insurance funds and define certain rights and obligations of members to the fund. With respect to the contractual aspect of the parties' relationship, section 1195A(2)

-2-

provides that "[a]n agreement to pool liabilities under this Chapter shall be set forth in an indemnity agreement signed by the employer and the fund representative acknowledging and agreeing to the assumption of the liabilities as set forth in this Subpart." Accordingly, the members of LOCA entered into the Second Revised and Restated Louisiana Oilfield Contractors Association Insurance Fund Trust and Indemnity Agreement (the "Trust and Indemnity Agreement"). This agreement delineates the rights and obligations of LOCA and its members. Article VI of the Indemnity Agreement sets forth the powers and duties of LOCA's trustees. Article VI, Section 1(a) grants the trustees the power to "assess, demand, collect, receive and hold member premiums on assessments in such amounts and at such times as [the trustees], in their discretion, deem necessary and proper to effectuate the purposes of the Trust...." Article VII of the Indemnity Agreement governs the rights and obligations of LOCA's members. Article VII, Section 2(h) provides that LOCA's liability "to the employees of any member-employer is specifically limited to such obligations as are imposed by Louisiana law...against the employer on account of personal injury and occupational disease arising out of or incurred during the course and scope of the employment relationship." Article VII Section 4 provides that if LOCA suffers a deficit, the trustees "will assess the [Trust's members] in an amount necessary

-3-

to cover the deficit and provide sufficient loss reserves," and states that a fund's members waive any right of contribution against other fund members.

LOCA filed for relief under Chapter 11 of the Bankruptcy Code on December 12, 2014. Early in the case, the court entered an order extending the stay to all actions and proceedings against members of LOCA on the grounds that any such claims were property of the bankruptcy estate. This extension of the stay was unopposed at the time. Subsequently, a group of injured workers employed by various members of LOCA sought relief from the automatic stay to pursue claims against these members. LOCA then filed the instant motion seeking a ruling that these claims are property of the estate and that Movants do not possess independent claims against LOCA members who did not employ them.

### DISCUSSION

**A. Claims Against Members Who Did Not Employ Movants.**

Movants first seek broad relief from the automatic stay on the grounds that they have direct claims against LOCA members who never employed them. A essential element of a workers' compensation claim under Louisiana law is the existence of an employer-employee relationship. See Ferguson v. HDE, Inc., 274 So.2d 783(1973); Williams v. Ajax Lumber, 819 So.2d 458(La.App 3 Cir. 6/5/02); 14 Malone & Johnson, Louisiana Civil Law Treatise: Worker's

-4-

Compensation Law and Practice 65 (5th ed. 2010). Accordingly, Movants possess workers' compensation claims against the LOCA member companies that employed them at the time of their injury. Movants seek to expand that liability to other LOCA members solely by virtue of their membership in the fund. This argument essentially eliminates the employment relationship as an essential element of a workers' compensation claim, at least with respect to member companies of self-insurance funds created under LSA-R.S.§§ 1191 et seq. Movants base this expansion of liability on LSA–R. S. 23:1196F, which provides that the members of a group self-insurance fund, like LOCA, are "liable in solido for liabilities of the fund." According to Movants, this imposition of in solido liability creates an independent cause of action by an injured worker against any member of LOCA regardless of whether the worker was actually employed by that member.

Whether a statutory provision creates an independent private cause of action under Louisiana law turns on legislative purpose and intent as reflected in the text and context of the relevant provision. See, e.g., Anderson v. Ochsner Health System, 172 So.3d 579 (La. 2014); Phillips v. Patterson Ins. Co.,813 So.2d 1191(La.App. 3 Cir. 4/3/02). Here, the text and context of section 23:1196F do not support an independent private cause of action or the expansion of workers' compensation liability advocated by

-5-

Movants. First, the text of this provision imposes in solido liability with respect to "liabilities *of the fund,*" not with respect to individual workers' compensation claims. The text does not refer to individual workers' compensation claims or the capacity of individual claimants to sue fund members based on this imposition of in solido liability. Rather, the text and statutory context of section 23:1196F indicate that it is part of a broader set of provisions that delineate the powers of a group self-insurance fund created under LSA-R.S. section 1191 et seq., and the relationship between that fund and its member employers. These provisions – and the LOCA Trust and Indemnity Agreement created under these provisions – empower LOCA to "assess" its members in "an amount necessary" to cover any deficits in the fund's operations. The LOCA Trust and Indemnity Agreement also gives LOCA the exclusive right to enforce its assessment powers in court, and to recover appropriate attorneys fees from its members. In light of these assessment powers, the imposition of in solido liability with respect to the *liabilities of the fund* – as opposed to liability for individual workers' compensation claims – allows LOCA and other section 1191 funds to ensure that the they can cover their liabilities and fulfill their statutory purpose "to pool [fund members'] liabilities to their employees on account of personal injury and occupational disease arising out of or incurred

-6-

during the course and scope of the employment." LSA-R.S. § 23:1195A(1). In other words, if one member fails to satisfy its obligations in the event of a fund deficit, the fund can rely on the imposition of in solido liability to recover from other fund members. The text and context of section 1196F thus indicates that the imposition of in solido liability relates solely to the relationship between LOCA and its members, not to the individual claims of Movants. See Wagoner v. Chevron USA Inc.,55 So.3d 12(La.App. 2 Cir. 8/18/10)(holding that the statutory provisions at issue governed the "reciprocal relationship between the lessor and the lessee" and, because the plaintiffs were "not lessors or parties to the leases," they could not maintain an independent cause of action under the statute). This connection is further illustrated by language in section 1196F that expressly ties the imposition of in solido liability to membership in a fund: "A fund member shall be liable in solido for liabilities of the fund incurred by the fund *after the inception of the fund year in which the employer becomes a member of the fund."* LSA-R.S. § 1196F (emphasis added).

Other provisions in the statute undermine Movants' broad reading of section 1196F. For example, in framing the statutory purpose for group self-insurance funds, section 1195A(1) refers to pooling claims arising *"during the course and scope of the*

-7-

*employment*," which is consistent with the traditional requirement of an employment relationship to recover under the Workers' Compensation Law. Section 1200.5 further provides that if a fund is insolvent and fails to address that insolvency through member assessments, the Louisiana Department of Insurance "may, in the name of the fund, levy such assessment upon the members of the fund sufficient to eliminate the insolvency." There is no reference in this provision or any other provision in LSA-R.S.§§ 1191 et seq. that confers any authority on individual claimants to exercise what are essentially a fund's statutory and contractual assessment powers. In sum, the statute does not contain the clear and equivocal statement of legislative intent necessary to read such a broad expansion of employer liability into section 1196F. See Phillips v. Patterson Ins. Co.,813 So.2d 1191(La.App. 3 Cir. 4/3/02) (requiring an "equally clear expression of legislative will" to recognize an implied cause of action that would "drastically affect the traditionally accepted relationships among insureds, insurers and claimants")

Turning to LOCA's motion and Movants' motions for relief from the automatic stay, LSA-R.S. §§ 1191 et seq. and LOCA's Trust and Indemnity Agreement give LOCA the exclusive right to make and recover assessments against its members and satisfy its statutory mandate to pool its members' liability for workers' compensation

-8-

claims. These statutory and contractual rights are "legal or equitable interests of the debtor in property as of the commencement of the case" and thus are property of the debtor's bankruptcy estate. 11 U.S.C. §541. As the debtor in possession, LOCA has exclusive standing to control and assert these estate claims. <u>See</u> <u>In re Educators Group Health Trust</u>, 20 F.3d 1281, 1284 (5th Cir. 1994). Movants cannot, therefore, establish grounds for stay relief because they do not have independent claims under section 1196F and lack standing to assert assessment claims that belong solely to LOCA's bankruptcy estate. Accordingly, the court grants LOCA's motion requesting a ruling that Movants do not have independent claims against the LOCA members who did not employ them and that they are barred by the automatic stay from pursuing any such claims. The court also denies Movants' motions for relief with respect to claims against these LOCA members. This result does not, as argued by Movants, leave them without a remedy. First, as explained below, Movants still possess their claims against their employers. Second, should the debtor in possession fail to pursue its assessment claims to the prejudice of Movants, there are remedies that may allow Movants to step into the shoes of the debtor in possession with regard to preserving these claims. <u>See</u> <u>Louisiana World Exposition v. Federal Insurance Co.</u>, 858 F.2d 233, 247 (5th Cir. 1988); <u>Official Committee of Unsecured Creditors</u>

-9-

of Cybergenics v. Chinery, 330 F.3d 548, 568-69 (3rd Cir. 2003); In re Cooper, 405 B.R. 801 (Bankr. N.D. Tex.2009).

**B. Claims Against Movants' Employers.**

Movants next seek relief from the stay to pursue claims against their employers. These claims arise out of the Louisiana Workers Compensation Law, and are not affected by LSA-R.S. §§ 1191 et seq. per section 1196E. Moreover, these claims involve non-debtors, and pursuit of these claims would not undermine the administration of the estate because LOCA would still retain its assessment claims against its remaining members. Accordingly, the court grants Movants' motions for relief with respect to Movants' claims against the members of LOCA who employed them.

**CONCLUSION**

As stated herein, the court GRANTS LOCA's motion with respect to non-employer direct claims by injured workers. The court further GRANTS IN PART and DENIES IN PART Movants' Motions for Relief from the Automatic Stay. The court grants relief from the stay with respect to the enforcement of workers compensation claims where Movants can establish the existence of an employer-employee relationship. The court denies the motions in all other respects. Each movant, with consent of opposing counsel, shall submit an order in conformity with the foregoing reasons as to each motion.

###

-10-